**WOOD OIL CO. et al.**

v.

**CORPORATION COMMISSION et al.**

No. 35727.

Supreme Court of Oklahoma.

Dec. 22, 1953.

As Amended Jan. 12, 1954.

Rehearing Denied March 9, 1954.

Application for Leave to File Second Petition for Rehearing Denied April 20, 1954.

McNeill & McNeill, Tulsa, and Edward Howell, Oklahoma City, for plaintiffs in error.

Floyd Green, Ferrill H. Rogers and T. Murray Robinson, Oklahoma City, and Byron Boone and J. R. Mann, Tulsa, for defendants in error.

BLACKBIRD, Justice.

This is an appeal from an order of the Corporation Commission in proceedings which may be termed a "sequel" to Wood Oil Co. v. Corporation Commission, 205 Okl. 537, 239 P.2d 1023, 1025. The same parties and property and one of the same Corporation Commission orders are in-

volved here as there. As in that opinion, the plaintiffs in error, Wood Oil Company and Chas. M. Day, will be referred to herein as "Wood Oil" and the defendants in error, Toklan Production Company and J. G. Catlett, Inc., as "Toklan". The Corporation Commission will be referred to merely as the "Commission."

As shown in Wood Oil Co. v. Corporation Commission, supra, Wood Oil is the owner of an oil and gas lease on the S½ N½ NW¼ of Section 14, Township 5 North, Range 2 West, McClain County, Oklahoma. Toklan owns such a lease on the N½ N½ of said quarter-section. No well has ever been drilled on this 40 acres.

On December 21, 1946, Wood Oil obtained production from a well in the center of the east 10 acres of its lease. At a regular hearing held pursuant to Toklan's application, the Commission on April 1, 1947, entered its Order No. 19890, in Cause C D No. 1375, extending the boundaries of the Wayne Pool (established by one of its previous orders) to include the area here involved, and created a drilling unit of the NE¼ NW¼ of the above named Section 14. Though duly notified, Toklan did not appear at this hearing. As to the rights of parties owning mineral interests in land overlying the pool (including Toklan and Wood Oil), the pooling order (Order No. 19890 in C D 1375) contained the following pertinent provisions:

"That in the event there are divided or undivided interests within any unit and the parties are unable to agree on a plan for the development for the unit, then the rights and equities shall be adjusted as provided for by sub-section D of Section 4, Chapter 3, Title 52, Oklahoma Session Laws, 1945."

Toklan and Wood Oil reached no agreement concerning their rights in the premises as contemplated in the above quoted provision of Order No. 19890, and thereafter Toklan filed an application commencing Cause No. 1486, before the Commission, for the determination of such rights, at the conclusion of which the Commission entered its Order No. 20690, which was appealed from in Wood Oil Co. v. Corporation Com-

mission, supra. As shown in the opinion in that case,

"* * * the Commission * * *, found: 'That the applicants in the case, under the law, are entitled, upon payment of their proportionate share of the cost of the drilling, completing and producing of the well, to take therefrom their proportionate share of the oil and gas, and to participate in the seven-eighths (⅞ths) working interests in the well; that for the purpose of this order, the sum of $33,000.00 is fixed as the cost of development and equipping of said well;' and adjudged: 'That the Wood Oil Company furnish to the Toklan Production Company and J. G. Catlett, Inc., within 10 days from the date of this order, a statement of the total cost of the completion, development and production of the well located on the SE/4 of the NE/4 of the NW/4 of Section 14, Township 5 North, Range 2 West, McClain County, Oklahoma; that the Wood Oil Company credit their actual expenditures with ⅞ths of the production from the well *from the date of its first production* to the date of the statement provided for herein; that within 10 days after receipt of such statement by the Toklan Production Company and J. G. Catlett, Inc., that they pay to the Wood Oil Company their proportionate share of the cost of completing and equipping the well, less the credit to such cost of the production from said well; that their proportionate share be determined in the relation that the acreage owned by them bears to the total acreage in the unit.' " (Emphasis added.)

As shown in the above cited opinion, this Court in that case reversed the Commission's Order No. 20690, in so far as it gave Toklan any share in the Wood Oil's well's production *before* the creation of the spacing unit, but upheld said order as to the above described interest it gave Toklan in the well's production *subsequent* to the creation of said unit. We further upheld the Commission's finding of $33,000, as to the cost of the well involved, against Wood Oil's contention that the further sum of

$50,000 should have been added to this, as representing the amount that the well hole had cost a former lessee and stranger to the action, before Wood Oil acquired the lease and converted the hole into a producing well by drilling it deeper.

From the above, it is obvious that our decision or opinion in Wood Oil Co. v. Corporation Commission, supra, reversed the Commission's order No. 20690, *only in part*, or to a certain extent, and left some of the matters involved for further determination and adjustment by the Commission, to which the case was "remanded for further proceedings not inconsistent with the views herein expressed." Notwithstanding this, and for some unexplained reason, when the mandates in this case and the one in C D No. 1505, whose final order was affirmed in Wood Oil Co. v. Corporation Commission, 205 Okl. 534, 239 P.2d 1021, went to the Commission, they were spread of record there by an order representing that both of said appealed orders were then "final and should be enforced by the" Commission's Conservation Department. As it will hereinafter be necessary to repeatedly refer to both the above cited opinion and to Wood Oil Co. v. Corporation Commission, 205 Okl. 537, 239 P.2d 1023, we will refer to the former as "Wood Oil Case 1" and to the latter as "Wood Oil Case 2."

During all of the time following the entry of the Commission's drilling and spacing order of April 1, 1947, hereinbefore referred to, one-fourth of the lessee's share of production from the Wood Oil's well had been impounded with its pipe line purchaser, and the amount which the Toklan was to pay Wood Oil as its share of the total cost of the "completion, development and production of the well" and the exact amount of the well's oil runs that Toklan was to receive, had never been determined as directed by the Commission's Order No. 20690. Shortly after the Commission's Journal Entry, spreading of record the mandates as above described, Wood Oil, despite the fact that they had furnished Toklan no statement to enable the aforementioned cost participation determination as directed by Order No. 20690, and despite

the declaration in paragraph 2 of said order that in the event of a dispute on that subject, the Commission specifically reserved jurisdiction to resolve it, filed suit in the Federal Court to recover these impounded oil runs or their proceeds from the pipeline purchaser. The pipeline company interpleaded Toklan, and after its intervention, the Federal Judge, at a pre-trial hearing of the cause, decided to hold the matter in abeyance until the above described matters referred to in Order No. 20690, could properly (and in accord with our views on its appeal in Wood Oil Case 2) be determined. Accordingly, Toklan then filed an "Amended Application" in the Commission's C D 1486, and thus began the present chapter in the controversy between the parties. In said application, Toklan set forth some of the salient background facts herein delineated and asserted that they and Wood Oil could not agree on the proper charges to be made as the costs of drilling, completing and operating the well, and that the Commission should "now exercise its reserved jurisdiction and properly determine such costs in order that the rights of the parties may ultimately be enforced" in the pending Federal Court action. After a hearing was regularly scheduled for this phase of the controversy, and Wood Oil had filed objections to the Commission's jurisdiction and a response to Toklan's amended application, a full hearing of the issues presented was had, after which the Commission entered its findings and order. The only parts of this document now helpful to notice are as follows:

"5. That all of the evidence as to the cost of completing and operating and receipts from runs from said well is taken from the books of the Wood Oil Company the operator and protestant herein and *there is no dispute as to the cost or receipts except the amount properly allowable for salvage of the casing and equipment taken from said well, and the question of whether or not Wood Oil Company should be allowed interest on the amounts explained by it in such operation.*

"6. That *this Commission does not purport to render judgment herein but*

does herein fix the costs of completing and operating said well and the receipts therefrom as follows:

"(a) That by prior decision of this Commission, the total costs of drilling and completing said well is fixed at the sum of $33,000.00;

"(b) That the total cost of drilling and completing said well and of operating said well from the 1st day of April, 1950 to the date of its abandonment was shown to be the sum of $60,339.71;

"(c) That the value of the salvage equipment other than tubing and casing when taken from the lease was shown to be $6,175.41;

"(d) That 6,000–⅓ of casing was taken from said lease and at the time it was taken therefrom it had a value of $2.75 per foot, or a total of $16,500.89;

"(e) That 7055–¼' of tubing was taken from said lease, and at the time it was taken therefrom it had a value of 90¢ per foot or a total value of $6,349.72, making a total value of the salvage taken from said lease the sum of $29,026.02, leaving as a net cost of operations, that is, total cost less total salvage $31,313.69;

"(f) That the total net receipts of the ⅞ths working interest from production from said well from the 1st day of April, 1950 to abandonment, amounted to the sum of $77,634.56;

"(g) That deducting the figure of $31,313.69, being the actual operating cost less all salvage, from total receipts, leaves a net profit figure of $46,320.87;

"(h) That applicants own a one-fourth interest in the Hunton Lime production and operation and therefore the Commission finds that Wood Oil Company received out of the one-fourth interest owned by applicants the net sum of $11,590.22.

"7. The Commission finds that insofar as it has determined the figures hereinabove set forth, it is limited to *actual cost* of operations and that no evidence was introduced by Wood Oil Company that it had paid interest on the money used in such operations, and that therefore this Commission cannot include interest in making such determination of costs.

Order

"It is therefore ordered by the Corporation Commission of Oklahoma as follows:

"1. That the net receipts of the sale of production from said well amounts to $77,634.56.

"2. That the net cost of the operation of said well from date of completion until abandonment is $31,313.69, which includes the cost of equipping and operation.

"3. That the net profits from operation of said well is $46,320.87.

"4. That the applicants herein are entitled to the sum of $11,580.22 as their share of the profits from the operation of said well." (Emphasis added.)

■ In here appealing from the last above quoted order (No. 26106) Wood Oil's first contention is that the Commission was without power in this case, its Cause C D No. 1486, to make any order entitling Toklan to any certain proportion of the production in the well involved because this was a matter that could have been determined in its Cause C D No. 1375, where, by its Order No. 19890, spacing was originally extended to the area involved herein and the unit was created for which this well was designated the sole producer. Wood Oil's counsel cite the fact that this order was not appealed from, and the principle that a final judgment of a court of competent jurisdiction is conclusive between the parties in a subsequent action involving the same subject matter as to all matters germane to the issues which could or might have been determined, as well as those which were actually determined. As additional authority for their position, they cite our opinion in Wood Oil Case 1, to the effect that the Corporation Commission cannot vacate, amend or modify one of its previous spacing and drilling unit orders after same has become final, in the absence of a showing of substantial change of

condition in the area since entry of the previous order. Admittedly, there was no such proof before the Commission at the time the order herein appealed from was entered, but none was necessary in view of the fact that counsel's argument is wholly inapplicable and founded entirely on a confusion or misconstruction of the background facts hereinbefore stated. As will be seen from our statement, Order No. 26106, now here for review, is no modification or amendment of the original order, No. 19890 (especially in the sense in which such terms were used in our opinion in the cited case) but was entered after the parties were unable to agree as to how they would each participate in the development of the unit through Wood Oil's well, which exigency was specifically contemplated, or provided for, in the portion of Order No. 19890, hereinbefore quoted, where reference was made to the statutory provision for procedure in the event of such disagreement, Chapter 3, Title 52, Okl. Session Laws 1945, § 4, subsection d.

■ Counsel for Wood Oil next argue that when we decided Wood Oil Case 2 the way we did, the Commission's Cause C D No. 1486, stood in the same situation that it would, if no hearing or trial had ever been had therein; and when the Commission spread our mandate in that case of record, as hereinbefore described, it divested itself of all further jurisdiction in the matter and could rightfully conduct no further hearing or enter the further order therein that is appealed from here. Again, counsel's argument is based solely on a misinterpretation of the facts. In this argument they refer to the above cited opinion as a reversal of the Corporation Commission's Order No. 20690, but we have already shown that it was only a partial reversal, or modification, and expressly contemplated further proceedings before the Commission as are here before us for review.

■ Wood Oil next argues that since Toklan was notified of the hearing in Cause No. C D 1395, but did not appear therein, and the original Order No. 19890, did not specifically, or by name, give Toklan the right to participate in the oil runs, or their proceeds, from the well in question, and that order became final without an appeal, Toklan was thus precluded from thereafter claiming, and the Commission precluded from thereafter granting them, any such right in said well. Here again counsel ignores the fact that both Order No. 19890 and the law governing such matters, Chapter 2, Title 52, Okl.Session Laws, 1946, supra, contemplated that such right could be determined by agreement, or, in the event of disagreement, by the Commission. This same question was before this court, and in effect, was determined adversely to Wood Oil's contention by our decision in Wood Oil Case 2.

■ In connection with the above argument, Wood Oil's further argument seems to be that since the well was "brought in" or began producing in 1946, the rights of any and all parties in the production therefrom was governed by the law then in force and effect, which, instead of Chapter 3a, Title 52, Okl.Session Laws, 1947 (shown as Title 52, § 87, in the Okl.Stat. Ann., 1937 Ed., Pock.Supp.), was 52 O.S. 1945, Supp. § 87. Since the cited 1947 amendment to our Conservation Law did not become effective until April 29, 1947, counsel points out that the original well-spacing and drilling unit order, No. 19890, entered twenty-eight days previous to that, must look for its authority to the conservation law as it then stood amended by the cited 1945 statute. It is particularly pointed out that the provision in 52 O.S.1945 Supp. § 87(d) authorizing the Commission to require owners to pool and develop their lands as a unit, contained no express mention of wells that *had* (already) *been drilled,* but provided only that where the owners had not *agreed* to pool their interests, "and where one such separate owner *proposes to drill* a well on said unit * *, the Commission * * * shall require such owners to pool and develop their lands * * * as a unit." The question thus presented is: Did the Corporation Commission have the power, before the effective date of the 1947 Amendment, to enter a valid pooling order as to a well that had already been brought in and produced (with the production therefrom having been

already brought to the surface and placed in the hands of the pipe line company or crude oil purchaser) and decreeing that one who had not participated in such discovery and production should participate in the proceeds of said production merely by paying what the Commission found to be his proportionate share of the expense of such operations? This question was also determined adversely to Wood Oil Company in the second paragraph of the syllabus in Wood Oil Case 2. Therefore, we do not propose to again decide it here, but we feel that it may not be inappropriate to further elucidate upon the matter to the end that such question will not again be raised. In the cited case, we quoted from Hunter Co. v. McHugh, 320 U.S. 222, 64 S.Ct. 19, 88 L.Ed. 5, wherein it was pointed out, with quotations from Ohio Oil Co. v. State of Indiana, 177 U.S. 190, 20 S.Ct. 576, 44 L.Ed. 729, and others, that the right of any individual to participate in production from a common source of supply is subject to the power of the State, through its conservation laws and regulatory body to prevent waste, and, in so doing, protect the correlative rights of the owners of mineral interests in the land overlying such common supply. The report of that case in the State Court, Hunter v. McHugh, 202 La. 97, 11 So.2d 495, shows distinctly that the well involved in that case was completed before the statute there applied, became effective. The latter opinion quotes extensively from our pioneering Patterson v. Stanolind Oil & Gas Co., 182 Okl. 155, 77 P.2d 83, which upheld Oklahoma's original well-spacing Act of 1935. In the Patterson case, the well over whose production the controversy arose was completed "some months" prior to the date of the Commission's spacing order therein attacked and a part of its production was already in the hands of the crude oil purchaser, Stanolind Oil & Gas Company, when the action was brought by the royalty owner to recover what, according to his claim and the Commission's order, was "his share" of the proceeds thereof. We cannot see how it makes any difference on principle, whether the share of such proceeds involved is that of a lessor, royalty owner or lessee. All have correlative rights in the common reservoir if their interests are in land overlying such reservoir. While we recognize that 52 O.S.1945 Supp. § 87, did not contain specific direction to the Corporation Commission to divide, by pooling order, the production of wells that had already been drilled when such order went into effect, Subsection (a) thereof, gave the Commission "power to establish well spacing and drilling units * * * for any common source of supply or prospective common source of supply in this State." Also, the well in question was by Order No. 19890 made an "exception" to the drilling pattern thereby established or the other drilling units in the area and Subsection (b) of said Section provides that when this is done, "the Commission shall * * * take *such other action* as may be necessary to protect the rights of interested parties." (Emphasis ours). In view of the foregoing, there can be no doubt but that the Oil and Gas Conservation Law, as amended in 1945, and remaining in force and effect at the time of the Commission's order of April 1, 1947, was sufficient to give the Commission the power, after its creation of a drilling unit, to make a proportionate division among the lessees in the unit, of the oil produced from an existing or previously drilled well in the unit. Wood Oil does not contend that the part of the well's production determined by the Commission to be Toklan's share is disproportionate to the quantum of Toklan's interest in the common source of supply, but it still contends that the Commission had no right to divide the production from its well in any manner, and that such a division is a taking of property without due process of law in violation of the Constitution. In our opinion in Wood Oil Case 2, we held the Commission's order invalid as to that portion of the oil produced by the well prior to the time that body had exercised its jurisdiction over the matter by creating the spacing unit, but, as herein indicated, we still cannot agree with Wood Oil's contention as to that portion produced after said order was made and became effective.

■ ■ The remainder of Wood Oil's argument pertains to the finding of the Com-

mission (hereinbefore quoted) with reference to the items it subtracted from the cost of the drilling and completing the well involved, to determine the amount Toklan should pay as its one-fourth part of that cost. Its counsel say that the amounts thus deducted as the value of the casing and tubing Wood Oil salvaged from the well and removed to its warehouse in November, 1951, are excessive, unjust, inequitable, arbitrary and contrary to law and the facts. The claim Wood Oil presented for these items was based on 75% of the "list" price for new pipe and tubing, less 10% for depreciation. It was shown that this price for new casing and tubing at or near that time was $1.2387 per foot, and 62.35¢ per foot, respectively. Toklan, however, introduced testimony to the effect that due to its scarcity, it was impossible to purchase such pipe on the market at those prices. Its witness, Mr. H. M. Lundquist, whose firm, Rogers Pipe & Supply Company, were dealers in used oil field pipe testified that $1.10 per foot was actually being paid for such tubing, when it could be obtained at that time, and that comparable casing would have sold at not less than $2.75 per foot. The testimony of Mr. J. G. "Catlin", indicated that such casing sometimes sold as high as $3.15 per foot about the time that the pipe was taken from the well. Thus there was competent evidentiary basis for the conclusion that the actual market values, or prices which, as a matter of actual practice, prevailed for such pipe, were higher than the theoretical or so-called "list" price for new pipe. We think the Commission was correct in basing its determination on "actual market values", the usual legal criteria in such matters, rather than the figures urged by Wood Oil. And in view of the testimony referred to, its order on this phase of the case cannot be held to be unsupported by substantial evidence. In this connection, see Cities Service Oil Co. v. Anglin, 204 Okl. 171, 228 P.2d 191; Peppers Refining Co. v. Corporation Commission, 198 Okl. 451, 179 P.2d 899; Pannell v. Farmers Union Co-op Gin Ass'n, 192 Okl. 652, 138 P.2d 817.

■ Wood Oil next complains that the Commission's order herein appealed from did not allow it interest on the operating cost of the well in determining the amount that should be paid by Toklan as its proportionate share of such cost. No authority is cited in support of such claim for interest, and, with apparent reference to the principles governing sales on credit (see 46 Am.Jur., Sales, Sec. 606), Toklan points out that previous to the hearing, Wood Oil presented it with no bill, statement or charge for such cost so as to start any interest accruing as on an overdue or delinquent account. In addition, Toklan points out that the Conservation Law has never authorized an interest charge, unless such charge is conceivably included or contemplated in the term "cost of the development and operation" as used in the 1945 and 1947 Amendments, supra, and that the meaning of said term is therein restricted to "the actual expenditures required * * *". We think Toklan's argument is sound. There was no evidence introduced before the Commission to show that Wood Oil was charged or paid any interest on the funds it used in operating this well or that such expense was in any way necessary to obtaining the production now impounded in the hands of the crude oil purchaser. In view of these considerations we must therefore conclude that the Commission committed no error in refusing, by its order, to add such a charge to the well's actual operating cost for the purpose of the adjustment of obligations between the parties contemplated in said order.

As no cause for reversal has been found in any of the assignments of error presented, the order herein appealed from is affirmed.

HALLEY, C. J., JOHNSON, V. C. J., and CORN, ARNOLD and WILLIAMS, JJ., concur.

O'NEAL, J., concurs in result.