**WILCOX OIL COMPANY, Plaintiff in Error,**

**v.**

**CORPORATION COMMISSION of the State of Oklahoma, Fred V. Shadid, N. F. V. Barkett, Ralph J. Shadid and E. N. Woody, Defendants in Error.**

No. 40519.

Supreme Court of Oklahoma.

June 9, 1964.

Glenn Davis, Tulsa, T. Murray Robinson, Oklahoma City, for plaintiff in error.

Ferrill H. Rogers, Conservation Attorney, Oklahoma City, for defendant in error Corporation Commission of Oklahoma.

Fisher Ames, Oklahoma City, Ames, Daugherty, Bynum, Black, Ashabranner & Rogers, Oklahoma City, of counsel, for defendants in error Fred V. Shadid, N. F. V. Barkett, Ralph J. Shadid and E. M. Woody.

WILLIAMS, Justice.

The matter to be resolved in this appeal is whether this Court should affirm an order made by the Corporation Commission holding that Wilcox Oil Co., a part of whose lease was placed in the same half-section drilling and spacing unit with a part of a lease owned by Shadid et al., could not charge up to the unit operation the cost of a

well previously drilled and already abandoned.

In August, 1959, Wilcox Oil Company, plaintiff in error, hereinafter referred to as Wilcox, commenced the drilling of a well, hereinafter referred to as Duggin No. 1, for oil and gas in the SE¼ NW¼ of Section 8, Township 9 North, Range 22 West, Beckham County. Wilcox owned oil and gas leaseholds covering the entire west half of that section except the N½ of NW¼ which was owned by defendants in error, Fred V. Shadid, N. F. V. Barkett, Ralph J. Shadid and E. M. Woody, hereinafter referred to as Shadid et al. For reasons not here involved it was necessary to abandon such well and commence the drilling of a second well, hereinafter referred to as Duggin No. 1–A, approximately one hundred feet away. After operations ceased on Duggin No. 1–A, the Corporation Commission of Oklahoma, hereinafter referred to as Commission, entered its orders creating half-section drilling and spacing units for further development of the Des Moines "A" Formation and the Missouri Formation. The west half of Sec. 8, 9N, 2W was designated as such a drilling and spacing unit. In September, 1961, Wilcox completed the Duggin No. 1–A well. In June, 1962, Shadid et al. filed an application with the Commission asking "That upon hearing the Commission enter an order pooling the Zone A of the Des Moines granite wash formation leasehold interests in the unit secondly above described, and assess and determine the costs of such Zone A of the Des Moines granite wash development and assess and determine the costs of the Missouri Formation development, and adjust the rights and equities of the parties hereto and grant any and all other relief to which the applicants are entitled."

Following a hearing before it on such application the Commission ordered Shadid et al. to pay Wilcox one-fourth of the cost of the Duggin No. 1–A well and refused to require them to pay any of the expenses incurred by Wilcox in connection with the Duggin No. 1 well. From that order Wilcox appeals. For reversal it advances two propositions. The first is that "The Commission erred in not allowing Wilcox Oil Company to recover all of its actual expenditures incurred in the development of the unit involved".

The amount spent by Wilcox on Duggin No. 1 is not in dispute.

The parties agree that 52 O.S.1961 § 87.1(d) is the applicable statute. In pertinent part it provides:

"* * * When two (2) or more separately owned tracts of land are embraced within an established spacing unit * * * the owners thereof may validly pool their interests and develop their lands as a unit. Where, however, such owners have not agreed to pool their interests, and where one such separate owner has drilled * * * a well on said unit to the common source of supply, the Commission, to avoid the drilling of unnecessary wells, or to protect correlative rights, shall * * * require such owners to pool and develop their lands in the spacing unit as a unit. All orders requiring such pooling shall be made after notice and hearing, and shall be upon such terms and conditions as are just and reasonable and will afford to the owner of such tract in the unit the opportunity to recover or receive without unnecessary expense his just and fair share of the oil and gas. * * * Such pooling order of the Commission shall make definite provisions for the payment of cost of the development and operation, which shall be limited to the actual expenditures required for such purpose not in excess of what are reasonable, including a reasonable charge for supervision. In the event of any dispute relative to such costs, the Commission shall determine the proper costs after due notice to interested parties and a hearing thereon * * *."

Under its first proposition Wilcox argues that since a person who in good faith enters into peaceable possession of land upon which he owns an oil and gas lease and pro-

duces oil and gas therefrom and the lease is thereafter declared void is entitled to the reasonable cost of producing the oil and gas in an action for an accounting by the landlord that its "position in this case is not less equitable and tenable than "that of such a trespasser".

Wilcox contends that Shadid et al. "did not come forward and say we would like to participate in the making of the decision to spend the money"; that "they were content to wait until production was obtained"; that they "now wish to say that Wilcox spent too much money obtaining" production; that "if it was reasonably made when made, no thereafter change in knowledge could make it unreasonable now". No question of the reasonableness of the charges for the expenses incurred in connection with the drilling and plugging of No. 1 well is here in issue. Rather the issue is whether or not Shadid et al. should be required to reimburse Wilcox for one-fourth of the cost of such well.

The contentions made by Wilcox are not applicable here. It must be remembered that the element of acquiescence does not enter into the present case. At the time Duggin No. 1 was being drilled Shadid had no interest in the land upon which such well was being drilled nor had the Corporation Commission entered a spacing order declaring such well to be their unit well. If Shadid et al. had been tenants in common with Wilcox, it may be that such contentions would then be pertinent. This Court has ruled upon a similar question in the case of tenants in common and has held that the drilling party is entitled to recoup his costs for unproductive wells on the same lease, inasmuch as they are part of the single enterprise of developing the lease. See Moody v. Wagner, 167 Okl. 99, 23 P.2d 633. However, in the instant case Wilcox and Shadid et al. were not interested in the same lease. Their interests did not combine until the Corporation Commission established the Duggin No. 1-A well as the unit well for the west half of Section 8. If Wilcox had never obtained any production, Shadid et al.

would not have been concerned with their operations. In its brief Wilcox states "If Wilcox had abandoned operations after the Duggin No. 1 got in trouble and had not proceeded with the operations and drilled the Duggin No. 1-A, the problems which are here in controversy would not have arisen. * * *"

The drilling of the "junked well", Duggin No. 1, is not shown to have added anything of value to the property of Shadid et al. There was no evidence that such well defined the production limits and pointed to the location from which production was obtained.

In support of its first proposition Wilcox cites the case of Champlin Refining Co. v. Aladdin Corporation, 205 Okl. 524, 238 P.2d 827. We do not consider it applicable as the facts are distinguishable from those of the present case. In the Champlin case, Champlin sought from the landowners recovery of the costs incurred in the drilling of a dry hole. The dry hole was drilled after a producing well had been drilled and prior to the drilling of a second producing well. In that case we held that the cost of drilling the dry hole was part of the reasonable costs of development and production. As above stated, in the instant case, Shadid et al. had no interest in the land on which the "junked well" was drilled. At the time of such drilling no order had been entered by the Corporation Commission designating such well as the unit well for the leasehold belonging to Shadid et al. See the discussion in the case of Wood Oil Co. v. Corporation Commission, Okl., 268 P.2d 878, 884, wherein we said:

"In our opinion in Wood Oil Case [v. Corp. Comm. No.] 2 (205 Okl. 537, 239 P.2d 1023), we held the Commission's order invalid as to that portion of the oil produced by the well prior to the time that body had exercised its jurisdiction over the matter by creating a spacing unit * * *."

There is no evidence of benefit to Shadid from the drilling of the "Junked well."

The adoption of a rule which would permit one driller on his own leasehold to recoup from the owner of another leasehold having no interest or connection with his leasehold at the time of drilling, part of the expenses incurred even though in good faith, would enable one such as Wilcox to engage in unrestrained drilling operations and conceivably drill several dry wells so long as it could when seeking contribution, say that its actions were recommended by its geologists. After all, Wilcox was drilling on its own leasehold and admittedly took a calculated risk.

We determine that the application of the rule should not be broadened to include recoupment of drilling costs so as to force contribution under the facts and circumstances of this case by a distinterested leaseholder.

In the case of Creslenn Oil Co. v. Corporation Commission, 206 Okl. 428, 244 P.2d 314, 317, is the following language:

"* * * The extent of our review of the evidence is limited under Article IX, sec. 20 of the Constitution of the State, which, insofar as here applicable, provides:

"'* * * In all other appeals from orders of the Corporation Commission the review by the Supreme Court shall not extend further than to determine whether the Commission has regularly pursued its authority, and whether the findings and conclusions of the Commission are sustained by the law and substantial evidence. * * *'

"Under our limited power of review, we are not authorized to make a comparison of evidence introduced by the respective parties before the Commission, nor are we authorized to weigh the evidence to see whether the order of the Commission is in accord with the weight of the evidence."

In the case of Spiers v. Magnolia Petroleum Co., 206 Okl. 509, 244 P.2d 850,

in the second paragraph of the syllabus we held:

"An order of the Corporation Commission, when appealed to this court, will be affirmed where it is supported by sufficient evidence."

It does not seem reasonable that one who has not enhanced property by drilling a "junked well" can claim partial reimbursement for the cost thereof.

Wilcox having added nothing of value to the oil and gas leasehold estate of Shadid et al. through the drilling of a "junked well" on another's property, is not entitled to recoup any portion of the expenses so incurred. The right of trespassers and tenants in common to recoupment has heretofore been confined to cases in which the value of the property has been enhanced, and rests upon equitable principles, which, under the facts and circumstances of this case, do not justify broadening the rule so as to permit recoupment for the expense of drilling a "junked well".

Obviously, no analogy exists between the rights of tenant in common or landowner who has justly profited from the development of property for oil and gas purposes and those of one who has no interest in the minerals underlying such property.

Wilcox's last proposition is "The Commission failed to condition the right of the applicants to participate in the well to the actual payment of their proportionate share of the full cost of the development and operation of the unit and in such manner as to properly protect Wilcox in the payment thereof."

Paragraph 4 of the Commission's order is as follows:

"That the applicants shall within thirty days of the date of this order pay or tender to Wilcox Oil Company the sum of $55,703.44, that being one-fourth of the cost of drilling and completing the Duggin #1–A well. The applicants shall within thirty days of this order also pay or tender to Wilcox Oil Company $892.52, that being one-

**246**

fourth of the operating expenses of the unit through June, 1962."

Wilcox argues that:

" * * * neither this Court nor the Commission can now tell Wilcox that when and if the order becomes applicable that Shadid, et al. will pay the sum of $55,703.44 or the sum of $892.52 which the Commission ordered them to pay within thirty days. If it is not paid, then what is the position of the parties? In what court could Wilcox obtain a judgment against Shadid, et al.? * * * Nor is Wilcox willing to accept the financial responsibility of Shadid in the sum of $55,703.44 in the absence of a bond. If they do not pay, then under the precedents of the Commission orders Wilcox is entitled to some sort of protection. If they do not pay and Wilcox is required to collect out of production, or even allowed to collect out of production, then it is entitled to some reasonable sanctions, penalty or compensation for carrying the additional burden thrust upon it."

In 20 Am.Jur. Evidence Page 221, Sec. 226, is the following language:

"Closely allied to the presumption of innocence is the presumption that the law has been obeyed. The law presumes, in the absence of proof to the contrary, that everyone obeys the law and discharges the duties imposed by law upon him * * * "

See Cooper v. Dasher, 290 U.S. 106, 54 S.Ct. 6, 78 L.Ed. 203, wherein the court said that it will not presume that its order will be flouted.

Wilcox is operator of the unit. 52 O.S. 1961 § 87.1(d) provides for:

" * * * a lien on the mineral leasehold estate or rights owned by the other owners herein and upon their shares of the production from such unit to the extent that costs incurred in the development and operation upon said unit are a charge against such interest by order

of the Commission or by operation of law."

In the event that Shadid et al. do not comply with the order of the Corporation Commission made February 13, 1963, Wilcox can institute appropriate proceedings before the Corporation Commission or in the courts.

Affirmed.

BLACKBIRD, C. J., HALLEY, V. C. J., and DAVISON, JOHNSON, JACKSON, IRWIN and BERRY, JJ., concur.