676 P.2d 283 (1983)
W.L. KIRKMAN, INC., Appellant,
v.
OKLAHOMA CORPORATION COMMISSION and Funk Exploration, Inc., Appellees.
No. 59385.
Court of Appeals of Oklahoma, Division No. 2.
December 20, 1983.
Released for Publication January 27, 1984.
Michael C. Mordy, Carson, Rayburn, Hirsch & Mueller, Oklahoma City, for appellant.
*285 David D. Hunt, II, Andrews Davis Legg, Bixler Milsten & Murrah, Oklahoma City, for appellee Funk Exploration.
Released for Publication by Order of Court of Appeals January 27, 1984.
*284 MEANS, Judge.
W.L. Kirkman, Inc., and Funk Exploration, Inc., both appeal from an order of the Oklahoma Corporation Commission. The Commission's findings and order concern a dispute between Funk and Kirkman over the reasonableness and propriety of expenses incurred by Funk in drilling a well. The Commission approved Funk's expenses, stating that the Commission had no power to determine whether or not decisions made by an operator were reasonable. Both parties contend that this statement of the Commission's power is erroneous. Having reviewed the record and applicable law, we reverse and remand.
In June 1980, Funk Exploration applied to the Commission for an order pooling the mineral interest owners in Sec. 15, T29N, R21W, Harper and Woods Counties. Among the mineral interest owners in this 640 acre unit is W.L. Kirkman, Inc.
After notice and hearing, the Commission issued Order No. 175730 which pooled the interest of Kirkman and other owners and designated Funk as the well operator. Pursuant to the terms of the order, Kirkman elected to participate in the well. None of the other owners elected to participate, and Kirkman became responsible for one half of the costs.
Order No. 175730 provided that participants were to pay their proportionate share of costs. Concerning these costs, the order provided:
For the purpose of this Order, the sum of $279,775 is the estaimted [sic] cost of drilling and completing a dry hole, and the sum of $514,035 is the estimated cost of drilling and completing a producing well. In the event there is a dispute as to such costs after said well has been completed, the Commission retains jurisdiction of this Cause for the purpose of determining such costs. (Emphasis added.)
Subsequently, Funk drilled and attempted to complete the Woolfolk Well, incurring actual costs of $850,832.09. As the Woolfolk turned out to be a dry hole, this cost is more than $570,000 higher than the estimated cost. Kirkman refused to pay its share of the costs, contending that these costs were unreasonable. Consequently, Funk filed an application with the Commission to determine reasonableness of the costs incurred.
On August 12, 1981, Trial Examiner Buchner heard evidence concerning the reasonableness of expenses incurred by Funk in drilling the Woolfolk Well. After hearing lengthy testimony from both Funk and Kirkman, the trial examiner concluded that $371,753.81 was the reasonable cost which should be attributed to the drilling of the well.
Funk filed exceptions to the trial examiner's report. In December 1981, the parties presented oral argument on the exceptions before the Oil and Gas Referees. The referees did not adopt the trial examiner's findings, but instead determined that the actual invoice costs submitted by Funk should be found to be the reasonable costs.
Kirkman filed exceptions to the referees' report and the cause was heard by the Commission. The Commission adopted the recommendations of the referees. Because most of the order is the subject of this appeal, a substantial segment is quoted below.
4. The Commission finds that the costs expended by the operator in the amount of $850,832.09 are reasonable and that it is necessary that the operator make decisions at the time, and further finds as follows:
a. This is a case in which substantial cost overruns were encountered in what appears to be a dry hole. The respondent, Wayne Kirkman, owns 50% of the unit. He refused to enter into a voluntary operating agreement with the applicant and therefore was pooled. He did not object to applicant being designated operator in the pooling case nor did he request operations. *286 Nevertheless, he evidently believed he was entitled not only to participate in the operator's decision-making function, but also to control the decisions that were made by the operator.
b. The first cost overrun occurred when the applicant was unable to obtain the $4,300-a-day rig that was expected at the time of the pooling hearing, and had to resort to a larger rig at $5,400 a day. Respondent states he had a rig that would have been available to the applicant, even though the rig was in the process of drilling another well when applicant commenced these operations. Respondent says he would have interrupted those operations and moved the rig onto applicant's drill site.
c. Circulation was lost while applicant was drilling through the fresh water zone and on the advice of a consulting engineering firm, applicant substituted foam for mud. Respondent contends that foam was too expensive and a lighter mud should have been used. The applicant paid $34 a barrel for frac oil purchased from a pipeline company. Respondent says that he would have sold the operator tank bottoms for only $3 to $4 a barrel.
d. With respect to the foregoing, reasonable and prudent operators disagree. Sometimes it does cost more to use the best equipment and material and sometimes it costs more in the long run to use the cheapest. In any event, the applicant was the designated operator. We find nothing in the record to indicate that other operators would not have made the same decisions. Without detailing respondent's many complaints, suffice it to say that on cross-examination, respondent admitted none of the invoiced prices were unreasonable. His sole objection was that in his opinion certain of the expenditures were the result of bad procedures and decisions.
e. The applicant tested and attempted completions in seven zones; this constituted the bulk of the cost overruns. Respondent says that none of the zones should have been tested nor had completion attempts made in them. Applicant's geologist, William L. Parker, testified that he was the well geologist in daily contact with drilling operations, that he examined samples and some sidewall cores, and that in his opinion, each of the zones should have been tested. He made that recommendation to the applicant and the Commission believes that a prudent operator will usually follow the advice of his geologist.
f. The Commission finds that the total amount of invoices presented by Funk Exploration is not questioned, that amount being $850,832.09; therefore, the actual expenditure of Funk Exploration is not questioned. Therefore in light of Wood Oil v. Corporation Commission [205 Okl. 537], 239 P.2d 1023 (Okl. 1950), the Commission finds no reason to make any other determination of costs.
g. This Commission does not purport to render judgment herein but does fix the costs of completing and operating the well. See Wood Oil Co. v. Corporation Commission, 268 P.2d 878 (Okl., 1953). Further, a Commission's order settling a dispute as to costs is not enforceable by the Commission. See Stipe v. Theus, 603 P.2d 347 (Okl., 1979).
h. The Commission finds that it is not given the responsibility of determining whether or not decisions made by an operator are reasonable decisions. The Commission can only examine whether the costs for such operations were reasonable in light of the decisions made by that operator.
Both Kirkman and Funk have appealed from this order. Kirkman alleges that Funk incurred excessive costs that were not required for the completion of the well. Kirkman states that the Commission's findings are not supported by the evidence. Both Kirkman and Funk assert that the Commission has mistakenly found that it *287 has limited power to determine the reasonableness of an operator's decision. Kirkman would have this court reverse the Commission's order and analyze the evidence to determine those costs that were both necessary and reasonable. Funk asks that we modify the order to state that its business decisions as operator were both required and reasonable.

I
The initial question to be answered concerns the Commission's authority to determine the proper costs of drilling operations. If the Commission has no responsibility to question the propriety and reasonableness of Funk's expenses, then Order No. 226815 must be affirmed if supported by the evidence. However, if the Commission has the responsibility to question whether Funk's expenditures were both required and reasonable, the order must at least be modified if not reversed.
The Commission's responsibility to determine proper costs is an extension of its power to pool the interests of owners in a well spacing unit. Title 52 O.S. 1981 § 87.1(e), provides in part:
All orders requiring such pooling shall be made after notice and hearing, and shall be upon such terms and conditions as are just and reasonable and will afford to the owner of such tract in the unit the opportunity to recover or receive without unnecessary expense his just and fair share of the oil and gas. The portion of the production allocated to the owner of each tract or interests included in a well spacing unit formed by a pooling order shall, when produced, be considered as if produced by such owner from the separately owned tract or interest by a well drilled thereon. Such pooling order of the Commission shall make definite provisions for the payment of cost of the development and operation, which shall be limited to the actual expenditures required for such purpose not in excess of what are reasonable, including a reasonable charge for supervision. In the event of any dispute relative to such costs, the Commission shall determine the proper costs after due notice to interested parties and a hearing thereon. (Emphasis added.)
The statute requires a determination on the Commission's part as to the proper costs whenever disputes occur. An evaluation of proper costs encompasses two determinations. First, the Commission must determine whether an actual expenditure was required to be made. Secondly, the Commission must examine that expenditure to determine whether it is in excess of what is reasonable. Thus, a proper cost is one that is both required and reasonable.
The statute clearly authorizes the Commission to retain jurisdiction to settle disputes concerning costs. Participants may challenge an expenditure as one which was either not required or if a required expense, one which may have been incurred at unreasonable cost. Certainly the Commission cannot contend that its power is limited to perfunctory approval of every invoice submitted by an operator. Such a contention would render the statutory language totally meaningless.
As stated in Crest Resources and Exploration Corp. v. Corporation Commission, 617 P.2d 215, 218 (Okl. 1980) (emphasis added; footnote omitted):
In the event of a cost overrun, if a dispute does arise as to the reasonableness of the expenditures to be charged, the Commission retains primary jurisdiction to adjudicate finally the liability attachable to the interest holders.

A finding that the Commission has power to adjudicate whether costs are both required and reasonable would be in harmony with other case law. The Commission itself clearly recognizes this power when it adjudicates the proper rates for public utilities. In such decisions, the Commission determines first whether the increase is required and then the reasonableness of such increases. The Commission often is forced to question a corporate decision in order to determine proper costs. See, *288 Southwestern Public Service Co. v. State, 637 P.2d 92 (Okl. 1981).
For the Commission to abdicate its power in the instant proceeding when it apparently has no qualms about determining the reasonableness of rate increases submitted by public utilities seems anomalous. The statutes and case law clearly give the Commission power and responsibility to determine whether Funk's operational decisions and expenses were both required and reasonable.
The Commission cites three cases in support of its refusal to determine the reasonableness of Funk's expenditures. The Commission uses Wood Oil Co. v. Corporation Commission, 205 Okl. 537, 239 P.2d 1023 (1950), to support its statement that the $850,832.09 expended by Funk was not questioned. However, in Wood Oil, the cost of developing the well was not challenged. The court stated, "The correctness of this amount as representing the actual outlay by Wood Oil is not questioned." Wood Oil had wanted the Commission to include a $50,000 expenditure incurred by a third party who had been a previous lessee as part of the costs of completion. The Commission determined that the $50,000 did not represent an actual expenditure by Wood Oil. It should be noted that there was no challenge to the reasonableness of Wood Oil's expenditures.
Likewise Wood Oil Co. v. Corporation Commission, 268 P.2d 878 (Okl. 1953), is also inapplicable. Wood Oil II deals with the finality of the Commission's orders and its authority to set out actual expenditures required for completion. In Wood Oil II, the Commission subtracted certain costs for completion to determine the amount one of the participants was required to pay. Both parties had presented conflicting evidence. The Commission based its findings on a determination of actual market values. In Wood Oil II, there is no doubt that the Commission determined the appropriate costs and apportioned these costs to the interest owners.
In the instant case it is true that Kirkman has not challenged actual market values or actual expenses incurred. However, Kirkman seriously challenged the propriety of many of Funk's expenses as being unrequired and excessive. Kirkman presented evidence as to how Funk could have reduced its escalating costs.
Finally, the Commission uses Stipe v. Theus, 603 P.2d 347 (Okl. 1979), as a statement to support its contention of limited power. In Stipe, the court answered the question concerning the power of the district courts to determine costs in the event of a dispute arising from forced pooling. Stipe, as an interest owner, had refused to pay certain expenses incurred by Davis Oil, and was sued in district court. Subsequently, Stipe applied to the Commission for an order to determine proper costs. The supreme court determined that Stipe was entitled to a stay of the proceedings in district court until the Commission determined proper costs. The court noted that Stipe's rights as a pooled interest owner, included "the right for the Commission to determine the proper costs in the event of a dispute."
Where parties disagree as to required and reasonable costs the Commission must examine those costs in reaching its determination. Both operator and interest owner are entitled to a definitive statement concerning the necessity and reasonableness of costs incurred.

II
Because the cause must be remanded for a determination of proper costs, we only briefly deal with Kirkman's remaining allegations of error.
Kirkman makes a point of noting the Commission's language, "With respect to the foregoing, reasonable and prudent operators disagree. Sometimes it does cost more to use the best equipment and material and sometimes it costs more in the long run to use the cheapest." Kirkman contends that this statement indicates the Commission considered evidence outside the record in making its decision. However, Kirkman himself disagreed with the *289 witnesses for Funk in testimony before the trial examiner on these very issues. There is evidence in the record to support this statement that operators disagree as to proper expenses.
Kirkman argues that the Commission erred in not accepting the trial examiner's report. While it is true that the statutes authorize the Commission to assign its employees to hear evidence as examiners, the statutes do not attach any particular weight or significance to examiner's findings. As stated in Cameron v. Corporation Commission, 414 P.2d 266, 272 (Okl. 1966):
Regardless of whatever weight the Commission may attach to the report, the Commission is the final arbiter of the issues. It is our opinion that, under these circumstances, the report of the Examiner is entitled to no special weight in this court in determining whether the order of the Commission is supported by substantial evidence.
Although the examiner's report is not entitled to any particular weight, the Commission in this instance must consider the evidence before the examiner. In the instant case the evidence taken before the examiner is the only evidence in the record. The only other proceedings, consisted of arguments on exceptions filed. As final arbiter, the Commission must specify the evidence which it considered in reaching its decision. Rule 25(a), Okla.Corp.Comm'n Rules of Practice (1981).
Kirkman also contends that the Commission erred in its failure to consider the estimated costs in the previous pooling order. However, these cost figures are mere estimates. As stated in Crest Resources and Exploration Corp. v. Corporation Commission, 617 P.2d at 218:
The costs' estimate in the prior pooling order constituted but a projection of reasonable expenses to be charged. It did not represent a Commission-fixed limit of liability to be borne. The cost figure always remains subject to adjustment. Until the project's completion, the amount of projected costs  approved as reasonable  lacks the legal attributes of finality.
Kirkman's last contention is that the order is not supported by substantial evidence. Although this court is given the power to review the entire record and enter a different order we note that where the decision of the Commission involves special expertise, the courts have often deferred to its particular ability to adjudicate. This does not preclude the court from a determination as to whether the Commission had sufficient evidence before it in order to exercise this special expertise. Where the evidence is more than sufficient and highly conflicting, the Commission's expertise becomes vitally important. As stated in Southwestern Public Service Co. v. State, 637 P.2d at 101 (footnotes omitted):
While this court is not precluded from making a review of the whole record and entering the appropriate order indicated by the record in its entirety, where, as here, the matters involved are of a technical nature and encompass an evaluation of expertise indigenous to the work of the Commission, we decline to do so.
Certainly many cases, such as the one here, involve the expertise of the Commission applied to the evidence presented. The courts have neither the technical knowledge nor resources to determine the appropriateness of Funk's expenditures or decisions.
In this dispute between Funk and Kirkman, there is a difference in estimated costs and actual invoices of nearly $580,000. Both parties are entitled to a definitive statement as to whether Funk's decisions and expenses were reasonable in drilling the Woolfolk Well.
The order is reversed and the cause remanded to the Commission with instructions to make a full and complete determination as to the reasonableness of costs and business decisions of Funk Exploration.
BACON, P.J., and BOYDSTON, J., concur.